# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN RIOS, | Case No. 1:21-cv-00293-SKO |
| Plaintiff, | |
| v. | **ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | (Doc. 1) |
| Defendant. | |

## I.   INTRODUCTION

On March 1, 2021, Plaintiff Adrian Rios ("Plaintiff") filed a complaint under 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.   BACKGROUND

Plaintiff's parent protectively filed an application for SSI payment on Plaintiff's behalf on August 23, 2017, as Plaintiff was still a minor as of that date, alleging that Plaintiff became disabled

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7, 9.)

on August 23, 2017, due to blindness in his left eye. (Administrative Record ("AR") 21, 192, 210.) Plaintiff was born on July 26, 2000, and was 17 years old as of the alleged onset date. (AR 25, 206.) During the relevant period, Plaintiff was considered a child for SSI purposes until July 25, 2018 (the day before his eighteenth birthday) and an adult thereafter. He graduated high school and has no relevant past work experience. (AR 30, 34.)

### A. Administrative Proceedings

The Commissioner initially denied Plaintiff's application for SSI benefits on October 10, 2017, and again on reconsideration on November 29, 2017. (AR 102, 112.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 118.) At the hearing on August 14, 2019, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions. (AR 46–66.)

Plaintiff testified that he became blind in his left eye when one of his friends shot him with a BB gun in junior high school. (AR 47, 56.) Six to eight months after the incident, Plaintiff received a prosthetic eye. (AR 50.) Plaintiff graduated high school and was pursuing an Associate of Arts degree in administration of justice. (AR 52.) Half of his classes are online, which allows him to take breaks as needed. (AR 60, 61.) When Plaintiff attends classes in person, the school provides him with special accommodations, such as giving him voice recorders or a seat at the front of the class. (AR 61.) He has a driver's license, but when he drives, he tries to stay in the same lane and avoid lane changes. (AR 60.) He drives himself to school, which is about five minutes away. (AR 65.) Plaintiff indicated that he also helps with chores around the house, such as taking out the trash, feedings the dogs, and putting his clothes away. (AR 65.) According to Plaintiff, he has difficulties seeing. (AR 59.) He also gets headaches a couple times a week as a result of eyestrain. (AR 62.) When Plaintiff gets a headache, he sometimes takes an Advil and then takes a break for about 30 to 40 minutes. (AR 63.) If he has two hours of work for his classes, he needs to take "two breaks 30 minutes in between 40 minutes." (AR 63–64.)

### B. The ALJ's Decision

In a decision dated September 24, 2019, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 21–36.) The ALJ conducted the five-step disability analysis set forth in

20 C.F.R. § 416.920. (AR 25–36.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 23, 2017, the application date (step one). (AR 26.) At step two, the ALJ found Plaintiff's following impairments to be severe, before Plaintiff attained age 18: exogenic obesity; left eye blindness; possible neurodevelopmental disorder; left eye prosthesis, "status post injury, corrected visual acuity in the right eye is 20/30"; and migraine headache. (*Id.*) Before attaining age 18, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 26–27.) Therefore, the ALJ determined that Plaintiff was not disabled prior to attaining age 18. (AR 33.) The ALJ then determined that, since attaining age 18, Plaintiff continued to have severe impairments but had not developed any new impairments. (AR 33.) Nor did Plaintiff have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the Listings since attaining age 18. (AR 34.)

Next, the ALJ assessed Plaintiff's RFC since attaining age 18 and applied the RFC assessment at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform medium work as defined in 20 CFR [§] 416.967(c) except that he can lift and carry 50 pounds occasionally and 25 pounds frequently, stand six hours, walk six hours, and sit six hours in an eight-hour workday with normal breaks. [Plaintiff] can perform frequent climbing ramps and stairs, balancing, stooping, kneeling, crouching crawling, but no climbing ladders, ropes, or scaffolds. [Plaintiff] cannot perform work requiring binocular vision, and must avoid concentrated exposure to very bright lights and dangerous and unprotected workplace hazards.

(AR 34.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" he rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 28.)

The ALJ determined that Plaintiff had no past relevant work (step four). (AR 33.) The ALJ ultimately concluded that, given his RFC, Plaintiff was not disabled because he could perform a significant number of other jobs in the national economy, specifically dining room attendant, Dictionary of Occupational Titles ("DOT") code 311.677-018, counter supply worker, DOT code

319.687-010; and kitchen helper, DOT code 318.687-010, all unskilled and medium work with a specific vocational preparation ("SVP")[2] of 2 (step five). (AR 35.)

On October 10, 2019, Plaintiff sought review of the ALJ's decision before the Appeals Council, which denied review on June 4, 2020. (AR 713.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

### III.   LEGAL STANDARDS

#### A.   Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). However, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 1382c(a)(3)(B).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [his] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not

---

[2] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

4

disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also* 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [his] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must

determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Circ. 2008) (quoting *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

Plaintiff contends the ALJ erred: (1) by failing to develop the record and obtain opinions from treating or examining sources when evaluating Plaintiff's case; and (2) in discounting Plaintiff's testimony regarding his subjective complaints. (Doc. 5–9.) For the reasons explained below, the Court finds that the ALJ erred in his evaluation of Plaintiff's testimony, and that error was not harmless. Because the Court will remand the matter on that basis, the Court will decline to address Plaintiff's remaining assertion of error.

### A.   Legal Standard

In evaluating the credibility of a claimant's testimony regarding their impairments, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* The claimant is not required to show that [his] impairment "could reasonably be expected to cause the

severity of the symptom she has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not sufficient to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (1995)).

**B.     Analysis**

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 28.) The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*) Since the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue

is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

The ALJ gave only one specific reason as to why Plaintiff's testimony about the effects of his symptoms was less than credible: the testimony was inconsistent with the objective medical evidence. (AR 28.) The Court finds this is not a specific, clear and convincing reason to discount Plaintiff's testimony because the ALJ may not reject a claimant's subjective statements for the sole reason that the testimony is inconsistent with the objective evidence. *See Burch*, 400 F.3d at 681; *Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001). Therefore, even if the ALJ's assessment of the objective medical evidence was fair, any inconsistency between the medical evidence and Plaintiff's testimony, alone, would not be a proper basis for rejecting his subjective complaints.

In addressing Plaintiff's testimony, the ALJ simply summarized the testimony and some of the medical evidence. (*See* AR 27–28.) The ALJ failed to specify which statements he found to be less than credible and the reasons for the lack of credibility. Without such specification, the Court is left to speculate as to which statements the ALJ intended to discount and how they are undermined by the evidence—which the Court may not do. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494–95 (9th Cir. 2015) ("We cannot review whether the ALJ provided specific, clear and convincing reasons for rejecting [the claimant]'s pain testimony where, as here, the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony . . . . In sum, we cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions.").

The Court also notes that the ALJ's proffered reason for discounting Plaintiff's testimony—that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision"—has been criticized by courts, including the Ninth Circuit, as "boilerplate language." *See, e.g., Laborin v. Berryhill*, 867 F.3d 1151, 1154 (9th Cir. 2017) (citing *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012)). The Ninth Circuit found this kind of language to be "problematic," as it "subverts the way an RFC must be determined relying on credible

evidence, including testimony." *Id.* "[I]nclusion of [the] flawed boilerplate language" "does not . . . . add anything to the ALJ's determination." *Id.* Because the ALJ included only the boilerplate language and did not specifically identify "the reasons explained in the decision," his analysis of Plaintiff's subjective complaints was flawed.

In an effort to salvage the adverse credibility determination, the Commissioner, noting that "the ALJ's reasoning was sometimes separate into the different portions of the decision, such as discounting Plaintiff's mother's statements," contends that the ALJ discredited Plaintiff on the additional bases that he received limited treatment and that his activities undermined his testimony. (*See* Doc. 16 at 8–9.)  These, however, were not reasons expressly articulated by the ALJ in connection with Plaintiff's adverse credibility determination. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201–02 (9th Cir. 1990) (rejecting link between ALJ's finding of possibly adverse evidence and adverse credibility determination in other portion of decision where ALJ did not "specifically link" the evidence to his conclusion that claimant's excess pain testimony lacked credibility); *see also Orn*, 495 F.3d at 630 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm on a ground upon which he did not rely."). Because this Court's review is limited to the rationale provided by the ALJ, the post-hoc rationalization advanced by the Commissioner cannot justify the ALJ's rejection of Plaintiff's subjective testimony. *See Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."); *Ceguerra v. Sec'y of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency.").

### C.   The ALJ's Error Was Not Harmless

The Court now turns to the analysis of whether this error by the ALJ was harmless. The Ninth Circuit "ha[s] long recognized that harmless error principles apply in the Social Security Act context." *Molina*, 674 F.3d at 1115 (citing *Stout*, 454 F.3d at 1054); *see also Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 932 n.10 (9th Cir. 2014) (stating that the harmless error analysis applies where the ALJ errs by not discharging their duty to develop the record). As such, "the court will

not reverse an ALJ's decision for harmless error." *Tommasetti*, 533 F.3d at 1038 (citing *Robbins*, 466 F.3d at 885).

An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (stating that an error is also harmless "'if the agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity'" (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004)). "In other words, in each case [courts] look at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. "[T]he nature of [the] application" of the "harmless error analysis to social security cases" is "fact-intensive—'no presumptions operate' and '[courts] must analyze harmlessness in light of the circumstances of the case.'" *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1121). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki*, 556 U.S. at 409 (citations omitted).

The Commissioner does not contend that any error by the ALJ in evaluating Plaintiff's credibility was harmless (*see* Doc. 16), and the record establishes that the ALJ's error was not harmless. If the ALJ had credited Plaintiff's testimony regarding certain functional abilities and included appropriate limitations in the RFC, that may have changed the disability determination. For example, Plaintiff testified that, for every two hours of work for his classes, he would need to take two breaks of 30 or 40 minutes each. (*See* AR 63–64.) Therefore, the error was not "inconsequential to the ultimate nondisability determination," *Molina*, 674 F.3d at 1115, and therefore not harmless.

### D. The ALJ's Error Warrants Remand for Further Proceedings

Where the ALJ commits an error and that error is not harmless, the "ordinary . . . rule" is "to remand to the agency for additional investigation or explanation." *Treichler*, 775 F.3d at 1099 (citations omitted). The Ninth Circuit recognized a limited exception to this typical course where courts "remand[] for an award of benefits instead of further proceedings." *Id.* at 1100–01 (citations omitted); *see also id.* at 1100 (noting that this exception is "sometimes referred to as the 'credit-as-

true' rule"). In determining whether to apply this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be useful." *Id.* at 1101 (citations omitted). As to the last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." *Id.* (citations omitted). Ultimately, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Swenson*, 876 F.2d at 689 (citation omitted).

The Court finds that the "credit-as-true" exception to the "ordinary remand rule" is inapplicable in this case because additional administrative proceedings would be useful. If the ALJ changes his evaluation of Plaintiff's subjective complaints, the ALJ should incorporate any warranted additional limitations in the RFC. Conversely, there may be specific, clear and convincing reasons the ALJ can offer for discounting the testimony. *See Voisard v. Berryhill*, No. 2:17–CV–1023-EFB, 2018 WL 4488474, at \*5 (E.D. Cal. Sept. 19, 2018) ("That the ALJ failed to provide sufficient reasons for discounting plaintiff's subjective testimony in this instance does not compel a finding that he is unable to do so.").

Even if the ALJ decides to credit as true some or all of Plaintiff's symptom statements and adjust the RFC determination for Plaintiff, the ALJ may still conclude that Plaintiff is not disabled because he has the RFC to perform the requirements of other work that exists in significant numbers in the national economy. The ALJ may also elect to further develop the record, if deemed necessary. Further proceedings would therefore be useful to allow the ALJ to resolve this "outstanding issue[ ]" before a proper disability determination can be made. *See Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988). Indeed, Plaintiff requests remand for further proceedings in the event the Court finds harmful error. (*See* Doc. 14 at 10.)

On remand, the ALJ should reevaluate Plaintiff's symptom testimony and address any necessary changes to the RFC determination. If the ALJ again discounts Plaintiff's subjective symptoms, he can then provide an adequate discussion of the specific testimony he is discounting

11

and the specific evidence that contradicts that testimony. *See Payan v. Colvin*, 672 F. App'x 732, 733 (9th Cir. 2016). The ALJ will also need to reevaluate his conclusions at Steps Four and Five of the disability determination in light of any changes to Plaintiff's RFC.

### E. The Court Declines to Determine Plaintiff's Remaining Assertion of Error

As the Court finds that remand is appropriate for the ALJ to re-assess Plaintiff's RFC, the Court does not reach Plaintiff's additional assertion of error regarding the ALJ's duty to develop the record, which as noted above, the ALJ may choose to do on remand. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Newton v. Colvin*, No. 2:13–cv–2458–GEB–EFB, 2015 WL 1136477, at *6 n.4 (E.D. Cal. Mar. 12, 2015) ("As the matter must be remanded for further consideration of the medical evidence, the court declines to address plaintiff's remaining arguments."); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## V. CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore VACATED, and the case is REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Adrian Rios and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:  **September 6, 2022**                        /s/ *Sheila K. Oberto*
                                                              UNITED STATES MAGISTRATE JUDGE